Filed 5/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK NEGRI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KONING & ASSOCIATES,<br><br>    Defendant and Respondent. | H037804<br>(Santa Clara County<br>Super. Ct. No. CV092242) |

California law provides that, absent an exemption, an employee must be paid time-and-a-half for work in excess of 40 hours per week.  To be exempt from that requirement the employee must perform specified duties in a particular manner and be paid "a monthly salary equivalent to no less than two times the state minimum wage for full-time employment."  (Lab. Code, § 515, subd. (a).)

The question presented in this case is whether a compensation scheme based solely upon the number of hours worked, with no guaranteed minimum, can be considered a "salary" within the meaning of the pertinent wage and hour laws.  We conclude that such a payment schedule is not a *salary* and, therefore, does not qualify the employee as exempt.  Since the trial court found the employee was exempt, we shall reverse.

### A.    *Factual and Procedural Background*

Plaintiff Mark Negri is an insurance claims adjuster who was employed by defendant Koning & Associates from May 2004 through October 2005.  He was paid $29 per hour with no minimum guarantee.  When he worked more than 40 hours in a week he still received only $29 per hour.  Plaintiff sued defendant for overtime pay.  Defendant

denied that plaintiff was owed any overtime since he was classified as an exempt employee under the administrative exemption of Industrial Welfare Commission (IWC) Wage Order 4 (Cal. Code Regs., tit. 8, § 11040 (regs. § 11040)).[1]

The matter was tried on undisputed facts submitted in the form of a written stipulation. The stipulation contained 30 separate facts, about half of which related to plaintiff's job duties. For example, the parties agreed that plaintiff "made his own schedule" and that he "was never supervised in the field" by defendant's managers. He spent most of his time "recording and tabulating data" and "transmitting that data to insurance carriers."

The stipulation also explained that plaintiff "was paid based on the total hours he submitted to Defendant for each client." "Each month, Plaintiff was provided with a billing ledger of all hours that he billed and for which he was compensated." Plaintiff received "all invoices extended to clients based upon Plaintiff's billed hours." Plaintiff's "hourly rate of pay was $29 per hour." "[Defendant] never paid [plaintiff] a guaranteed salary, rather he was paid on an hourly rate of $29.00 per hour per claim basis. That is to say if he worked less claims [*sic*] in a pay period he made less money than if he worked more claims." But no matter how much he worked, he did not receive overtime pay; "plaintiff was paid $29 per hour for work done on each claim." Plaintiff estimated that he worked an "average 20 hours a week of overtime" during all 66 weeks he worked for defendant.

Plaintiff's theory of the case was that since he was compensated based upon the hours he worked he did not receive a salary and, therefore, he could not be categorized as exempt. The trial court did not base its decision on the compensation issue, however. At

---

[1] The most current Wage Order 4 was effective in 2001. (See Cal. Code Regs., tit. 8, § 11040.) The legislature defunded the IWC in 2004, but its wage orders remain in effect. (*Kettenring v. Los Angeles Unified School Dist*. (2008) 167 Cal.App.4th 507, 512, fn. 2 (*Kettenring*).)

the time the trial court issued its statement of decision, *Harris v. Superior Court* (2011) 53 Cal.4th 170 (*Harris*), which concerned the classification of insurance claims adjusters, was pending before the Supreme Court. The issue in *Harris* was whether insurance adjusters "are not exempt employees as a matter of law." (*Id.* at p. 175.) Since the issue had not been decided as a matter of state law, the trial court turned to federal law, noting that Department of Labor regulations state that "insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . ." The court also cited several federal cases (*In re Farmers Ins. Exchange*, *Claims Represent.* (9th Cir. 2007) 481 F.3d 1119; *Cheatham v. Allstate Ins. Co.* (5th Cir. 2006) 465 F.3d 578; *Roe-Midgett v. CC Services*, *Inc.* (7th Cir. 2008) 512 F.3d. 865), which had held that insurance claims adjusters are exempt employees. Although the trial court found that plaintiff had worked "20 hours of overtime a week," the court nevertheless concluded that plaintiff was an exempt employee.

The trial court entered a judgment in defendant's favor. Plaintiff has timely appealed.

### B. Discussion

#### 1. Issue and Standard of Review

The only issue on appeal is whether the trial court erred in finding plaintiff to have been an exempt employee notwithstanding the manner in which he was paid. There are no disputed factual issues. Accordingly, the question is one of law subject to our independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801.)

#### 2. Analysis

Exemptions from the overtime pay requirement are proper only where "the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." (Lab. Code, § 515, subd. (a).) Such

3

exemptions are narrowly construed. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794.) "[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." (*Id.* at pp. 794-795.)

The parties agree that Wage Order 4, which governs "persons employed in professional, technical, clerical, mechanical, and similar occupations . . ." (regs. § 11040, subd. 1), is the regulation that applies here. Wage Order 4 sets forth detailed requirements for the three allowable exemptions: executive, administrative, and professional. (Regs. § 11040, subd. 1(A)(1), (2), (3).) Among other things, Wage Order 4 provides that to qualify as exempt under any one of these three categories the employee must be primarily engaged in exempt duties (*id.*, subd. 1(A)(1)(e); *id.*, subd. 1(A)(2)(f); *id.*, subd. 1(A)(3)(b)), and earn "a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment" (*id.*, subd. 1(A)(1)(f); *id.*, subd. 1(A)(2)(g); *id.*, subd. 1(A)(3)(d)).

*Harris*, *supra*, 53 Cal.4th at page 175, involved the job-duties prong of the exemption test. As the Supreme Court explained, "The essence of our holding is that, in resolving whether work qualifies as administrative, courts must consider the particular facts before them and apply the language of the statutes and wage orders at issue." (*Id.* at p. 190.) Here, however, the question does not relate to the duties prong of the exemption test but to the compensation prong. There is no question that the amount plaintiff was paid exceeded the minimum amount required for exemption. The question is whether the manner in which plaintiff was paid qualifies as a *salary* within the meaning of Wage Order 4.

Wage Order 4 refers to compensation in the form of a "salary." It does not define the term. The regulation does not use a more generic term, such as "compensation" or "pay." Either of these terms would encompass hourly wages, a fixed annual salary, and anything in between. "Salary" is a more specific form of compensation. A salary is

4

generally understood to be a fixed rate of pay as distinguished from an hourly wage.[2] Thus, use of the word "salary" implies that an exempt employee's pay must be something other than an hourly wage. California's Labor Commission noted in an Opinion Letter dated March 1, 2002, that the California Division of Labor Standards Enforcement (DLSE), construes the IWC wage orders to incorporate the federal salary-basis test for purposes of determining whether an employee is exempt or nonexempt. (<http://www.dir.ca.gov/dlse/opinions/2002-03-01.pdf> as of May 16, 2013.) Although DLSE opinion letters are not controlling authority, we properly rely upon them to inform our interpretation of IWC wage orders. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1028.) Accordingly, we turn to federal law for the definition of "salary."

The federal salary-basis test is found in the regulations implementing the Fair Labor Standards Act. (29 U.S.C. § 201 et seq.) Those regulations explain that, in order to be exempt from the federal overtime pay requirement, an administrative employee must be engaged in specified administrative job duties and be paid on a "salary or fee basis." (29 C.F.R. § 541.200(a)(1).) An employee is paid on a "salary basis" if the employee "*regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided in paragraph (b) of this section [relating to absences from work], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of

---

[2] See, for example, Oxford English Dictionary Online (3d ed. 2000; online version Mar. 2012) (<http://oxforddictionaries.com/definition/english/salary> as of May 16, 2013), defining "salary" as "a fixed regular payment, typically paid on a monthly basis but often expressed as an annual sum, made by an employer to an employee, especially a professional or white-collar worker."

days or hours worked.  Exempt employees need not be paid for any workweek in which they perform no work.  An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  If the employee is ready, willing and able to work, deductions may not be made for time when work is not available."  (29 C.F.R. § 541.602(a), italics added.)[3]

The rule is that state law requirements for exemption from overtime pay must be at least as protective of the employee as the corresponding federal standards.  (*Ramirez v. Yosemite Water Co.*, *Inc.*, *supra*, 20 Cal.4th at p. 795.)  Since federal law requires that, in order to meet the salary basis test for exemption the employee would have to be paid a predetermined amount that is not subject to reduction based upon the number of hours worked, state law requirements must be at least as protective.  Defendant has stipulated to the very opposite.

It is true that in each of the federal cases cited by the trial court the reviewing court concluded that the insurance adjusters' duties qualified for the administrative exemption.  But the federal administrative exemption, like that of Wage Order 4, requires both a finding that the employee performed specified duties *and* a finding that the employee received compensation as specified.  In each of the cases cited by the trial court, the only issue was whether the adjusters' duties were administrative.  There was no question that the plaintiffs' compensation met the federal requirements.  (*In re Farmers Ins. Exchange*, *Claims Represent.*, *supra*, 481 F.3d at p. 1127; *Cheatham v. Allstate Ins.*

_____

[3] 29 Code of Federal Regulations part 541.602, became effective in August 2004. (69 Fed. Reg. 22122, 22260-22274 (Apr. 23, 2004).)  However, the italicized language is identical to that found in the version of the regulation in effect in 2002 (see former 29 C.F.R. § 541.118(a)) when the Labor Commissioner issued the aforementioned opinion letter.

6

*Co.*, *supra*, 465 F.3d at p. 584; *Roe-Midgett v. CC Services, Inc.*, *supra*, 512 F.3d at p. 868.)  Thus, these cases do not apply to the issue before us.

Citing *Kettenring*, *supra*, 167 Cal.App.4th 507, defendant argues that an employer may calculate a salary based upon hours worked.  While this is so, the resulting salary must still be a *predetermined amount* that is *not subject to reduction* based upon the quantity or quality of work.  In *Kettenring*, the appellate court considered whether a school district's compensation for adult education teachers, calculated by multiplying a flat rate by the number of classroom hours taught, was a "salary" for the purposes of Wage Order 4.  Referring to the federal salary-basis test and DLSE interpretation of "salary," the appellate court found that the teachers were paid on a salary basis.  As in this case, the appellate court was limited to considering the stipulated facts, which included the plaintiffs' acknowledgement that the defendant had not violated the collective bargaining agreement and the collective bargaining agreement, which, in turn, established that the teachers received a predetermined amount that was " 'not subject to reduction because of variations in the . . . quantity of the work performed.' "  (*Id.* at p. 514.)

Defendant argues that *Kettenring* supports its claim that plaintiff was properly classified as exempt because plaintiff's "workload" was not subject to reduction or variation and he "worked substantially the same number of hours each week of his employment."  In effect, it is defendant's position that, even though it paid plaintiff by the hour, because there was always enough work to occupy him for 60 hours per week, the resulting compensation was a salary because it did not vary.  But in *Kettenring*, although the teachers' pay was determined by estimating the number of hours of teaching involved, the result was a salary because the amount was not "subject to" reduction; the teachers were paid the predetermined rate regardless of how many hours they actually put in.  Plaintiff's pay did vary according to the amount of time he put in.  He was not paid a predetermined amount.

7

Defendant further maintains that "some sort of reduction in workload" must actually occur in order for an employee to lose his exemption. In support defendant cites *Kennedy v. Commonwealth Edison Co*. (7th Cir. 2005) 410 F.3d 365, 370 (*Kennedy*), in which the appellate court observed, with regard to salaried employees, that " 'a *reduction of salary* must have actually occurred for an employee to lose the exemption.' " Defendant takes the comment out of context. Under the current and pre-2004 regulations, a defendant claiming that an employee was exempt from the federal overtime law had the burden of proving that the employee was paid: "(1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed." (*Baden-Winterwood v. Life Time Fitness*, *Inc*. (6th Cir. 2009) 566 F.3d 618, 627, citing 29 C.F.R. § 541.602(a) and former § 541.118(a).) That exemption can be lost under 29 Code of Federal Regulations part 541.603, if the employer makes improper deductions from the *salary*.[4] "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." (29 C.F.R. § 541.603(a).) But the actual deduction issue does not arise unless the employer at least attempted to pay the employee on a salary basis. Here, defendant affirmatively states that it did not pay a "guaranteed salary."

We recognize that, in practice, defendant always paid plaintiff the equivalent $29 per hour for 40 hours per week so that he, in effect, received an unvarying minimum

---

[4] 29 Code of Federal Regulations part 541.603 provides, in pertinent part: "(a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. . . . [¶] (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees. . . ."

amount of pay.  We also recognize that, as a general matter, an exempt employee may be paid extra for extra work without losing the exemption.  (See *Kennedy*, *supra*, 410 F.3d at p. 371.)  The problem here is that defendant stipulated to the fact that it "never paid [plaintiff] a guaranteed salary"; if he worked fewer claims "he made less money than if he worked more claims."  That is the same thing as saying that plaintiff was not paid "a predetermined amount" that "was not subject to reduction based upon the quantity of work performed."  He was not paid a salary.  For that reason, defendant did not prove that the administrative exemption of Wage Order 4 applies in this case.

### C.     *Disposition*

The judgment is reversed.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 10-07-CV092242 |
| Trial Judge: | Hon. Socrates P. Manoukian |
| Counsel for Plaintiff/Appellant:<br>Mark Negri | Law Offices of Ari Moss<br>Ari E. Moss<br><br>Dennis F. Moss, Attorney at Law<br>Dennis F. Moss |
| Counsel for Defendant/Respondent:<br>Koning & Associates, Inc. | Matheny, Sears, Linkert & Jaime<br>Michael A. Bishop<br>N. Kate Jeffries |

Negri v. Koning & Associates
H037804