Filed 1/25/21  Cooper v. Gallegos CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHARON COOPER, | |
| Plaintiff and Respondent, | G058597 consol. w/ G058668 |
| v. | (Super. Ct. No. 30-2018-01022663) |
| GRUPO GALLEGOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and postjudgment order of the Superior Court of Orange County, Sherri L. Honer, Judge.  Reversed and remanded with instructions.

Hunton Andrews Kurth, Roland M. Juarez, Julia Y. Trankiem, and Elbert Lin for Defendant and Appellant.

Barlow, Kobata & Denis and Mark T. Kobata for Plaintiff and Respondent.

Sharon Cooper worked for Grupo Gallegos (Gallegos) as a salaried, exempt employee. After a few years, due to the economic downturn, Gallegos and Cooper entered into an agreement reducing both her hours and salary. Eventually, Cooper's hours increased, but her salary did not. She voluntarily resigned from her position. Cooper brought an action with the Labor Commissioner pursuant to Labor Code section 98,[1] seeking unpaid wages (including overtime wages), liquidated damages, and waiting time penalties. The Labor Commissioner determined Gallegos properly classified Cooper as an exempt employee, but nevertheless awarded Cooper damages under section 223. Gallegos appealed the decision to the trial court, which determined Cooper was an exempt employee, but awarded hourly "compensation for all hours worked in excess of 30 hours per week ($32,737.88), as well as waiting time penalties ($15,900.90)" under a breach of contract theory.

On appeal, we are asked to determine whether a salaried employee, who the trial court found to be exempt and the parties stipulated was paid all of her salary, was entitled to additional unpaid wages under a breach of contract theory. We determine she was not. Accordingly, we reverse the court's judgment, as well as the postjudgment order for attorney fees.

FACTS

I. *Factual Background*

Gallegos was an advertising agency. In 2008, Gallegos hired Cooper as an associate media director to direct and oversee the media planning for its clients. Gallegos offered Cooper an annual salary of $135,000 as a full-time employee, which meant a "[s]tandard 40 hour week." Gallegos classified Cooper as an exempt employee. Cooper also received a signing bonus of $25,000 and was eligible for the executive performance

---

[1] All further statutory references are to the Labor Code, unless otherwise indicated.

bonus program, one which was only provided to positions in upper management. Cooper's job title did not change during her employment.

Prompted by a downturn in revenue and clients, Gallegos approached Cooper in late 2012 and proposed to change her employment status from full-time to part-time. In April 2013, Cooper and Gallegos entered into an agreement to reduce her work hours (agreement), with an effective date of March 18, 2013. Gallegos prepared the agreement and Cooper played no role in its preparation nor did she make any revisions to it. Gallegos continued to classify Cooper as an exempt employee after the parties entered into the reduced work hour arrangement. The parties agreed upon a salary of $110,250 a year for the reduced work schedule, representing 75 percent of Cooper's salary of $147,000. Cooper's hours were then reduced to 30 hours per week.

Cooper was not required to clock in or out as an exempt employee. At all times during her employment, she earned a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. Gallegos paid Cooper a salary of $110,250 per year during the remainder of her employment, regardless of the number of hours she worked.

Gallegos abided by Cooper's reduced work schedule from March 2013, through May 2014, when she took a medical leave of absence. Upon her return to work in July 2014, the 30-hour workweek increased and by August 1, 2014, Cooper worked 40 to 50-hour weeks without additional compensation. This was because of turnover in the media department and additional accounts to service.

Beginning in September 2014, and various times thereafter, Cooper complained to management her hours exceeded the 30-hour limit in the agreement. Chris Mellow asked Cooper to "hang in there" and stated they would "get it fixed." Mellow conceded "it" never was fixed. Gallegos did not give Cooper additional compensation. Cooper requested to be returned to a full-time schedule and her salary restored to its previous level. Her department's director, Andrew Delbridge, rejected the request.

3

Mellow spoke to Delbridge, about Cooper's concerns, but Delbridge advised Mellow Gallegos was not in a position to hire anyone and Cooper would have to "make due."

On November 24, 2015, Cooper voluntarily resigned from her employment with Gallegos. Her last day of work was December 10, 2015.

II. *Procedural Background*

In August 2016, Cooper filed an action with the Labor Commissioner pursuant to section 98, in which she sought unpaid wages (including overtime wages), liquidated damages, and waiting time penalties pursuant to section 203 on the basis of the purported misclassification. Cooper did not bring a common law breach of contract claim before the Labor Commissioner.

Two years later, the Labor Commissioner issued its order, decision, or award (award), determining Gallegos properly classified Cooper as exempt under the administrative exemption pursuant to California law. However, the Labor Commissioner awarded Cooper damages pursuant to section 223, based on its finding Gallegos paid Cooper less than her contracted rate. The Labor Commissioner awarded Cooper unpaid wages for all the time she worked above 30 hours per week pursuant to section 223, as well as waiting time penalties under section 203.

Gallegos timely appealed the award to the Superior Court of Orange County. On January 31, 2019, five days before the hearing, Cooper raised a common law breach of contract claim against Gallegos. Gallegos objected to Cooper's attempt to raise the claim, but the trial court determined it would "consider all issues." The court stated if Cooper was found to be a non-exempt employee it would have to calculate her damages, "and the contract can be used to certainly calculate what the wages should be based on the contract rate." The court added the agreement would be "perhaps relevant in terms of what was certainly the expectations and what was the hour - - it's not an hourly rate, but how the Court could use that in calculating what the appropriate rate should be."

4

The trial court conducted a de novo bench trial in February 2019. The court concluded Gallegos met its burden of establishing Cooper was properly classified as exempt from overtime under the administrative exemption. The court ruled in Cooper's favor on her breach of contract claim. The court determined it could decide Cooper's breach of contract claim as part of the section 98 appeal because, had Cooper been required to file a separate civil action, it could have consolidated that action with the wage claim. It made the factual finding that, in August 2014, after Cooper returned to work following her medical leave, "[Gallegos] increased Cooper's workload significantly to the point she was continuously working well over 30 hours per week" even though the agreement stated she would only work 30 hours per week. The court stated, "Cooper complained about the additional hours almost immediately and at one point suggested she be returned to full-time status and pay. The company acknowledged Cooper was working excessive hours and repeatedly told Cooper to 'hang in there' or the company was 'going to fix it,' but [Gallegos] never adjusted Cooper's hours or pay."

The trial court ruled, "[a]lthough the parties had agreed for Cooper to work a part-time, 30-hour work week in exchange for a 25 [percent] reduction in pay, [Gallegos] knowingly required Cooper to consistently work more than 30 hours without any additional compensation." Based on its findings, the court determined, "[Gallegos] breached the . . . agreement, and Cooper is entitled to her hourly rate of pay for all hours worked in excess of 30 hours per week." The court awarded Cooper "compensation for all hours worked in excess of 30 hours per week ($32,737.88), as well as waiting time penalties ($15,900.90)." It also determined Cooper was "entitled to interest, costs, and attorney fees."

Cooper filed her motion for attorney fees, requesting $74,745 under section 98.2. Gallegos opposed the motion, arguing Cooper was not entitled to attorney fees under section 98.2 because she prevailed not on a wage claim but on a breach of contract

5

claim. Gallegos asserted any request for attorney fees should be pursuant to Civil Code section 1717, which governs breach of contract claims.

The trial court ruled because Cooper was awarded unpaid wages on her breach of contract claim and waiting time penalties on appeal, Gallegos "was unsuccessful in its appeal from the Labor Commissioner award," and Cooper was entitled to attorney fees under section 98.2, subdivision (c). It awarded Cooper $74,745.

DISCUSSION

Gallegos asserts the trial court's decision awarding Cooper both contract damages and waiting time penalties under a breach of contract theory was legally incompatible with its finding Cooper was an exempt salaried employee. It also maintains the court improperly awarded Cooper attorney fees. On these facts, we agree.

I. *Applicable Law*

"'The California Labor Commission is part of the Department of Labor Standards and Enforcement (DLSE), which is under the Department of Industrial Relations. The DLSE enforces wage and labor standards and all labor laws not specifically delegated to another agency (e.g., Fair Employment and Housing Administration, Division of Occupational Safety and Health, or Division of Workers' Compensation).' [Citation.] [¶] '[I]f an employer fails to pay wages in the amount, time, or manner required by contract or statute, the employee may seek administrative relief by filing a wage claim with the [Labor Commissioner] or, in the alternative, may seek judicial relief by filing an ordinary civil action for breach of contract and/or for the wages prescribed by statute.' [Citation.] With respect to the first alternative, the Labor Commissioner has broad authority to reject, investigate, adjudicate, or litigate (on behalf of the employee), depending on the nature of the employee's claim. [Citation.] [¶] '[S]ection 98 includes remedial procedures for *adjudicating* wage claims, enforced by the [DLSE] under the direction of the [C]ommissioner. It states that the [C]ommissioner "shall have the authority to investigate employee complaints." [Citation.] The

6

[C]ommissioner "may provide for a hearing in any action to recover wages, penalties, and other demands for compensation." [Citation.] [¶] . . . [¶] If the [C]ommissioner decides to accept the matter and conduct an administrative hearing—commonly known as a "Berman hearing" after the name of its sponsor, then Assemblyman Howard Berman— he or she must hold the hearing within 90 days . . . .' [Citation.] 'The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. [Citation.] [As explained by our Supreme Court,] "the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims." [Citation.]' [Citation.]" (*Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 913-914, fn. omitted.)

"Within 10 days after service of notice, the parties may seek review by filing an appeal to the municipal or superior court 'in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo.' [Citation.] The timely filing of a notice of appeal forestalls the commissioner's decision, terminates his or her jurisdiction, and vests jurisdiction to conduct a hearing de novo in the appropriate court. [Citation.] If no party takes an appeal, the commissioner's decision will be deemed a judgment, final immediately and enforceable as a judgment in a civil action. [Citations.] [¶] Although denoted an 'appeal,' unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. [Citation.]" (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 947-948.)

II. *Breach of Contract Claim*

Gallegos claims the trial court improperly awarded Cooper hourly wages on a breach of contract claim. We agree.

Under California law, an employee is deemed an exempt employee if she is paid on a "salary basis" and meets the duties test for one of the statutory exemptions. The three statutory exemptions are executive, administrative, and professional. (*Negri v. Koning & Associates* (2013) 216 Cal.App.4th 392, 397 (*Negri*).) The administrative

7

exemption, the only one at issue here, is interpreted under certain incorporated regulations listed in the Fair Labor Standards Act in effect at the time the 2001 wage orders were enacted. (Cal. Code Regs., tit. 8, § 11040(1)(A)(2).) The federal regulations incorporated into Wage Order 4-2001 serve as guidance on the question of whether an employee is exempt. (*Harris v. Superior Court* (2011) 53 Cal.4th 170, 187 ["Wage Order 4-2001, the operative order here, along with the incorporated federal regulations, set out detailed guidance on the [exemption] question"].) Employees paid on a salary basis receive a predetermined amount "constituting all or part of his [or her] compensation" not subject to reduction regardless of any changes in the quantity or quality of work. (See 29 C.F.R. § 541.118(a) (2000).) "[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." (*Negri*, *supra*, 216 Cal.App.4th at p. 398.)

A "salary is generally understood to be a fixed rate of pay as distinguished from an hourly wage" and that using "the word 'salary' implies that an exempt employee's pay must be something other than an hourly wage." (*Negri*, *supra*, 216 Cal.App.4th at p. 397, fn. omitted.) The DLSE Enforcement Policies and Interpretations Manual, provides that an hourly rate is only calculated for a salaried employee if "a non-exempt employee is paid a salary." (Dept. of Industrial Relations, Div. of Labor Stds. Enforcement (DLSE), Enforcement Policies and Interpretations Manual (Rev. 2019) § 48.1.5.4.)

The parties stipulated Gallegos satisfied the salary basis requirement. Gallegos paid Cooper "a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment, which is defined as 40 hours per week." Indeed, Cooper does not dispute Gallegos paid her entire salary during the relevant time regardless of the hours she worked—in twice monthly payments of $4,593.75. Based on these stipulated facts, the trial court properly determined Gallegos met its burden of

8

establishing Cooper qualified under the administrative exemption. Ultimately, the court held Gallegos properly paid Cooper for all hours worked under the Labor Code.

Notwithstanding the trial court's classification of Cooper as an exempt employee, however, it went on to award Cooper compensation for every hour she worked above 30 hours based on an hourly wage calculated by the court under a breach of contract theory. Based on its own calculations, the court determined Cooper's hourly rate was $70.67, and calculated she was owed an additional 463.25 hours. This was error. We note this case is distinguishable from other more typical wage cases, which often involve a challenge to an employee's classification. Here, Cooper's classification is not at issue—the parties stipulated she was an exempt employee and Gallegos paid Cooper a salary of $110,250 per year "regardless of the number of hours worked." The agreement stated Gallegos would pay Cooper a salary for all "services rendered," and it did. Under these facts, for the court to have awarded Cooper damages in the form of hourly wages, it was required to make a predicate finding she was an hourly, non-exempt employee who had been misclassified as exempt. However, it found the opposite, and the text of the agreement supported that finding.

Cooper argues an opinion letter from the DLSE supports her position. In the letter, the DLSE opined an exempt employee whose hours are reduced maintains the exemption so long as: the reduction in hours is temporary in nature and the employer intends to restore the full work schedule and salaries when economic conditions improve, the employer does not intend to adjust the employee's salary frequently, and the employee earns a monthly salary that is more than twice the minimum wage. (Dept. Industrial Relations, DLSE Opn. Letter No. 2009.08.19 (Aug. 19, 2009) pp. 5-6 (DLSE Opinion Letter).) Cooper contends the DLSE Opinion Letter validates the trial court's finding she was entitled to additional wages under a breach of contract theory even though she was an exempt employee. We disagree.

9

The DLSE Opinion Letter is only relevant to the question of whether Cooper was properly classified as exempt—specifically, whether Cooper maintained her exempt status after she signed the agreement with the reduced salary in the amount of $110,250. Cooper, however, does not challenge the court's finding that she is exempt. The DLSE Opinion Letter does not support Cooper's claim that as an exempt employee she is entitled to an hourly wage above her scheduled hours. It says nothing about whether a salaried, exempt employee can be entitled to additional hourly pay under a breach of contract theory. (Dept. Industrial Relations, DLSE Opn. Letter No. 2009.08.19, *supra*, pp. 5-6.)

Cooper also relies on *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762 (*Oman*), to support her claim for hours worked in excess of the contracted rate. In *Oman*, the Supreme Court determined an airline's formulas for calculating the compensation of non-exempt airline attendants did not violate a prohibition on "borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks." (*Id*. at p. 781.) *Oman* is inapposite because it concerned non-exempt employees, which Cooper concedes she is not. Furthermore, Cooper does not allege Gallegos engaged in any borrowing of compensation.

Cooper's reliance on *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 is equally misplaced. The *Hernandez* court determined a non-exempt worker was entitled to overtime for hours he worked but for which he was not paid. (*Id*. at p. 725 ["Absent an *explicit*, *mutual* wage agreement, a fixed salary does not serve to compensate an employee for the number of hours worked under statutory overtime requirements"].) Cooper was an exempt employee working under the agreement and she was undisputedly paid all of her salary.

Furthermore, looking at the clear language of the agreement, Cooper failed to demonstrate Gallegos's breach. "A cause of action for damages for breach of contract

10

is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. [Citation.]" (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.) The agreement stated, under the title commencement date and term, Cooper was to work 30 hours a week. In a separate section titled employee compensation, it listed her salary of $110,250. What it did not do, however, was tie one concept to the other. In other words, her salary was intended to compensate her completely, and was not tied to actual hours worked. Cooper fails to demonstrate how Gallegos breached the agreement because she admits it paid all her salary, and fails to point to a contractual provision allowing her to claim overtime pay for hours worked in excess of 30. Just as Gallegos would not be permitted to *reduce* Cooper's salary if she worked less than 30 hours in a given week, Cooper, as an exempt, salaried employee was not entitled to additional compensation for time worked above 30 hours.

Cooper also asserts "substantial evidence" supports the trial court's ruling Cooper was entitled to compensation beyond her salary, citing remarks made by Gallegos employees to "'hang in there'" and that they would "'get it fixed.'" This evidence, however, does not change the fact that Cooper was paid her full salary.

While we are sympathetic to Cooper's plight, allowing recovery in this case would undermine the purpose of the Labor Code by allowing exempt, salaried employees to recover "overtime" wages when they work more than 40 hours a week. It also would discourage employers from offering flexible work arrangements for salaried, exempt employees. Furthermore, when an employee continues to work for compensation under changing circumstances, the employee has accepted the new compensation and conditions. (See *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 637 ["an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions"].)

11

Finally, Gallegos contends the trial court lacked authority to consider Cooper's breach of contract claim because the Labor Commissioner lacked jurisdiction over the claim. We recognize, "the section 98.2 proceeding is neither a conventional appeal nor review of the Labor Commissioner's decision, but rather a de novo trial of the wage dispute. [Citations.] The trial court 'hears the matter, not as an appellate court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner.' [Citations.] . . . [P]revious decisions suggest that a trial court's power to hear a wage dispute extends to the consideration of related issues not reached by the Labor Commissioner." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116-1117.) "Permitting trial courts to exercise jurisdiction over the entire wage dispute, including related wage claims not raised in front of the Labor Commissioner, is consistent with trial courts' broad discretion in adjudicating claims at trial." (*Id*. at p. 1117.) Because the breach of contract claim involved the identical issues addressed by Cooper's wage claims, in this particular factual scenario, we assume it was properly before the trial court.

III. *Waiting Time Penalties*

Gallegos claims the breach of contract claim could not support a waiting time penalty award because Cooper did not succeed on a wage claim, but rather a breach of contract claim. Because we reverse the judgment, however, Cooper did not succeed at all. Gallegos paid Cooper her entire salary and she was not entitled to waiting time penalties under section 203, subdivision (a).

IV. *Attorney Fees*

Gallegos contends the trial court erred by awarding Cooper attorney fees under section 98.2, subdivision (c). We agree. Because the judgment is reversed, the postjudgment order awarding fees is also reversed.

12

DISPOSITION

The judgment and postjudgment order are reversed.  The case is remanded to the trial court with directions to enter a judgment in favor of Gallegos.  Gallegos shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

13